STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael Scott LONG,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2007AP2307–CR. Oral argument March 6, 2009.
—Decided May 27, 2009.*

2009 WI 36

(Also reported in 765 N.W.2d 557.)

For the defendant-appellant-petitioner there were briefs by *Joseph L. Sommers* and *Sommers Law Office,* Oregon, and oral argument by *Joseph L. Sommers.*

For the plaintiff-respondent the cause was argued by *Anne C. Murphy,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. Michael Scott Long seeks review of an unpublished decision of the court of appeals affirming his conviction and sentence for second-degree sexual assault and false imprisonment.[1] He asserts that there was insufficient evidence to convict him of either offense. In addition, he contends that the circuit court erroneously concluded that he was a persistent repeater under Wis. Stat. § 939.62(2m) (2007–08).[2]

¶ 2. We conclude that there was sufficient evidence for a jury to find Long guilty of second-degree sexual assault and false imprisonment. However, we also determine that the circuit court incorrectly applied Wis. Stat. § 939.62(2m). Under the plain language of the statute and the facts alleged in the complaint, Long is not a persistent repeater. Accordingly, we affirm the convictions, vacate the sentence, and remand to the circuit court for resentencing consistent with this opinion.

---

[1] *State v. Long,* No. 2007AP2307–CR, unpublished slip op. (Ct. App. Aug. 12, 2008) (affirming judgments of the circuit court for St. Croix County, Edward F. Vlack, III, Judge.)

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

I

¶ 3. On October 24, 2004, Michael S. Long entered the Country Inn in River Falls and had an encounter with the front desk attendant, Bobbie D. According to the criminal complaint, Bobbie D. told the police that Long asked her to hug him so that she could feel his penis. He then grabbed Bobbie D. from behind, hugging her three or four times. She told the police that his penis touched her buttocks and inner thigh through their clothing. Ultimately, Bobbie D. fled and Long departed.

¶ 4. Long was charged with one count of second-degree sexual assault contrary to Wis. Stat. § 940.225(2)(a) and one count of false imprisonment contrary to § 940.30. For both counts, he was charged as a persistent repeater under Wis. Stat. § 939.62(2m)(b)1. That subsection is commonly referred to as the Wisconsin "three strikes" statute, and it can subject a third-time offender to a mandatory term of life imprisonment without the possibility of parole.

¶ 5. To count as a strike, a previous conviction must have been for a "serious felony." The statute lists Wisconsin offenses that are considered to be serious felonies. Wis. Stat. § 939.62(2m)(a)2m. Further, it provides that a "comparable" out-of-state conviction can be counted as a strike "only if the court determines, beyond a reasonable doubt, that the violation relating to that conviction would constitute a [serious felony] if committed by an adult in this state." Wis. Stat. §§ 939.62(2m)(a)d., 939.62(2m)(d).

¶ 6. The complaint listed two Minnesota convictions as the basis for application of the persistent repeater statute: a December 18, 2003 conviction for first-degree burglary and a January 7, 2004 conviction

for fourth-degree criminal sexual conduct.[3] Long filed a motion to dismiss the persistent repeater enhancer. The judge deferred consideration until after trial, reasoning that Long's status as a persistent repeater would only be relevant for sentencing purposes if Long was found guilty of second-degree sexual assault or false imprisonment.

¶ 7. At trial, Bobbie D. testified that she was working behind the desk at the Country Inn on the evening of October 24, 2004. Long entered the motel wearing white spandex shorts, a purple shirt, and a baseball cap.[4] He told her that he was wearing spandex because he lost a bet, and he asked if it was revealing. She testified that she thought he was joking, and when Long asked her to accompany him to the breakfast room, she went.

¶ 8. At that point, Long asked Bobbie D. to rate his penis on a scale from one to ten and asked her to come hug him so that she could tell him how his penis felt. Bobbie D. testified that she "didn't know what to do" and that she "just stood there" because "she was too afraid to leave at that point." She also testified, "I said no and I started to back away. I just took one or two steps away. I didn't leave the room but I backed away and I said no."

¶ 9. On cross-examination, however, Bobbie D. was uncertain about whether she affirmatively told Long he could not hug her. The following exchange occurred between Bobbie D. and the defense attorney:

---

[3] The complaint also listed an August 11, 2003 conviction for indecent exposure. Since the filing of the complaint, the State has not argued that the 2003 indecent exposure conviction would constitute a serious felony in Wisconsin.

[4] Long did not testify, but he stipulated that he was the individual who approached Bobbie D. at the Country Inn on October 24, 2004.

Q: And does the report indicate that Mr. Long asked you if you would mind if he hugged you?

A: That's what it says.

Q: And that your response was that you didn't say anything, is that correct?

A. I said I wouldn't do it. I'm not going to hug him.

Q: Your testimony today is that you told Mr. Long that you would not hug him?

A: When he asked if I would mind if he hugged me I don't remember, I guess I don't recall if I stood there or if I said no but he never asked if I would hug him.

¶ 10. Bobbie D. testified that Long assaulted her: "He approached me and grabbed me and put his arms around me and hugged three to four different times." She described the hug as "[v]ery forceful. It was very tight." She testified that his penis touched her buttocks and inner thigh through her clothes. "He just kept holding on very tight and both arms were around and it was just very tight and he didn't let go." Bobbie D. further testified that she did not cry out or say anything because she was afraid, and she did not run away because he was holding her too tightly. When he let go, she ran behind the desk and into a back room and called her supervisor.

¶ 11. The jury was instructed on second-degree sexual assault and the lesser included crime of fourth-degree sexual assault,[5] as well as on false imprisonment. The jury returned guilty verdicts for both second-degree sexual assault and false imprisonment.

---

[5] Both second- and fourth-degree sexual assault require proof that the defendant had sexual contact with the victim and that the victim did not consent to the sexual contact. Second-degree sexual assault requires proof of one additional element

¶ 12. Prior to sentencing, the circuit court issued a written memorandum decision and order concluding beyond a reasonable doubt that two of Long's previous convictions were comparable to serious felonies in Wisconsin. Thus, the court determined that Long would be sentenced to a life sentence without the possibility of parole under the persistent repeater statute, Wis. Stat. § 939.62(2m)(c).

¶ 13. In reaching this conclusion, the circuit court examined Long's previous conviction for fourth-degree criminal sexual conduct in Washington County, Minnesota. According to the criminal complaint, Long entered a tanning salon on March 23, 2003, and had sexual contact with an employee without her consent. There is no plea colloquy or judgment of conviction in the record. However, according to a Minnesota sentencing order, it appears that Long pleaded guilty to fourth-degree criminal sexual conduct on January 7, 2004. The circuit court in this case determined that this conviction was comparable to a Wisconsin conviction for second-degree sexual assault, and thus the conviction counted as one strike. Long does not contest this ruling.

¶ 14. The circuit court also examined Long's previous conviction for first-degree burglary in Hennepin County, Minnesota. According to the criminal complaint, two women allowed Long to enter their apartment on March 26, 2003. Once inside, Long asked the women to rate the size of his penis. The women told Long to leave, and he did. About one minute later he reentered the apartment without knocking, went into one of the bedrooms, and began to masturbate. One of the women yelled at him to leave. Long told her that she

—that the sexual contact was by use or threat of force or violence. *Compare* Wis. Stat. §§ 940.225(2)(a) *and* 940.225(3m).

had a "nice butt" and asked to see it. When she refused, Long pulled down her pants and grabbed her buttocks.

¶ 15. Long was charged with first-degree burglary, fifth-degree criminal sexual conduct, and indecent exposure. There is no judgment of conviction or plea colloquy in the record. Nonetheless, according to a court document entitled "Terms and Conditions of Felony Sentence," it appears that Long pled guilty to the burglary charge on December 13, 2003. There is nothing in the record indicating the disposition of the fifth-degree criminal sexual conduct charge or the indecent exposure charge. However, at oral argument the parties agreed that those charges had been dismissed.

¶ 16. The circuit court also determined that the underlying conduct in the Hennepin County conviction "would constitute second-degree sexual assault under Wisconsin law." The court thus concluded that the burglary conviction was a second strike, and that the persistent repeater enhancement would be applied to the sentence.

¶ 17. On November 26, 2006, Long was sentenced to life imprisonment without the possibility of parole on the second-degree sexual assault conviction. The court also sentenced him to a concurrent sentence of three years confinement and three years extended supervision on the false imprisonment conviction.

¶ 18. Long appealed, arguing that there was insufficient evidence to convict him of second-degree sexual assault and false imprisonment. He also challenged the application of the persistent repeater penalty enhancement, asserting that his Hennepin County burglary conviction was not comparable to a serious felony in Wisconsin. The court of appeals issued a per curiam decision affirming the convictions and sentences.

¶ 19. This case requires us to review the sufficiency of evidence supporting a jury verdict. When a defendant challenges a verdict based on sufficiency of the evidence, we give deference to the jury's determination and view the evidence in the light most favorable to the State. *State v. Hayes*, 2004 WI 80, ¶ 57, 273 Wis. 2d 1, 681 N.W.2d 203. If more than one inference can be drawn from the evidence, we must adopt the inference that supports the conviction. *State v. Hamilton*, 120 Wis. 2d 532, 541, 356 N.W.2d 169 (1984). We will not substitute our own judgment for that of the jury unless the evidence is so lacking in probative value and force that no reasonable jury could have concluded, beyond a reasonable doubt, that the defendant was guilty. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

¶ 20. This case also requires us to interpret and apply the persistent repeater statute, Wis. Stat. § 939.62(2m). Statutory interpretation and application present questions of law which we review independently of the determinations rendered by the circuit court and the court of appeals. *State ex rel. Hipp v. Murray*, 2008 WI 67, ¶ 20, 310 Wis. 2d 342, 750 N.W.2d 873. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole and in relation to the language of surrounding or closely related statutes. *State v. MacArthur*, 2008 WI 72, ¶ 9, 310 Wis. 2d 550, 750 N.W.2d 910.

### III

¶ 21. We address first the challenges Long makes to his Wisconsin convictions for second-degree sexual

assault and false imprisonment. Long argues that there was insufficient evidence for a reasonable jury to convict him of either offense. Specifically, he argues that there was insufficient evidence of use of force to sustain his conviction for second-degree sexual assault. As to the false imprisonment conviction, he argues that there was insufficient evidence that he confined or restrained Bobbie D. and that there was insufficient evidence to show a lack of consent. We address these arguments in turn.[6]

A

¶ 22. The jury was instructed that to find Long guilty of second-degree sexual assault, it must conclude that: (1) Long had sexual contact with Bobbie D.; (2) Bobbie D. did not consent to the sexual contact; and (3) the sexual contact was by use or threat of force or violence. The instructions specified that the third element is satisfied if the "use or threats of force or violence compel the victim to submit. The phrase by use of force includes forcible sexual contact or force used as the means of making sexual contact." Long does not argue that the jury instructions were erroneous.

¶ 23. Instead, he argues that there was insufficient evidence of force because Bobbie D. testified that he hugged her and a hug is not equivalent to force. He

_____

[6] Long also asserts that the rule of lenity should apply here. Under the rule of lenity, we will construe a criminal statute in favor of the accused "[w]hen there is doubt as to the meaning of a criminal statute." *State v. Quintana,* 2008 WI 33, ¶ 66, 308 Wis. 2d 615, 748 N.W.2d 447 (quotations and citations omitted). Because we do not doubt the meaning of the criminal statutes at issue, we do not apply the rule of lenity here.

further argues that because Bobbie D. was not certain whether she told Long not to hug her, the jury was presented with insufficient evidence to conclude that Long forced her to submit to sexual contact. In essence, Long argues that if Bobbie D. passively succumbed to the hug, the hug could not have been forceful or violent.[7]

¶ 24. Long's arguments are not persuasive. Under Wisconsin law, force has been used when the victim is compelled to submit. *See State v. Bonds,* 165 Wis. 2d 27, 32, 477 N.W.2d 265 (1991) (concluding that the force element of second-degree sexual assault was met when Bonds grabbed a woman's nipple and squeezed it). In *Bonds,* the court said, "Force used at the time of contact can compel submission as effectively as force or threat occurring before contact. Regardless of when the force is applied, the victim is forced to submit." *Id.*

¶ 25. Here, Bobbie D. testified that Long grabbed her, hugged her tightly and forcibly, and that she was too afraid to cry out. From this testimony, the jury could have determined that Long forcibly held Bobbie D., compelling her to submit so that he could make sexual contact. We conclude that a reasonable jury could have determined beyond a reasonable doubt that the sexual contact was by use or threat of force or violence.

---

[7] Although Long's argument might be construed as an attempt to argue that Bobbie D. consented to the sexual contact, we do not and cannot read it that way. Sexual contact occurred when Long pressed his penis against Bobbie D's body. Even if Bobbie D. affirmatively consented to the hug, that fact would not establish that she consented to the sexual contact.

Further, Long has conceded that there was sufficient evidence to convict him of fourth-degree sexual assault, defined as sexual contact without consent. Thus, Long has acknowledged that a jury could find that Bobbie D. did not consent to sexual contact.

■

**B**

■

¶ 26. Long also argues that there was insufficient evidence to convict him of false imprisonment. The jury was instructed on the five elements of false imprisonment: (1) the defendant confined or restrained Bobbie D.; (2) he did so intentionally; (3) he did so without her consent; (4) the defendant had no lawful authority to restrain her; and (5) he knew that she did not consent and that he did not have lawful authority to restrain her. The instruction further explained:

> If the defendant deprived Bobbi D. of freedom of movement or compelled her to remain where she did not wish to remain then Bobbie D. was confined or restrained. The use of physical force is not required. One may be confined or restrained by acts or words or both. A person is not confined or restrained if she knew that she could have avoided it by taking reasonable action. A reasonable opportunity to escape does not change confinement or restraint that has occurred.

¶ 27. Long does not argue that the instruction misstates Wisconsin law. Instead, he argues that Bobbie D.'s testimony was insufficient to establish that Long confined or restrained her. He contends that it would be absurd to conclude that one can be confined by a hug. Instead, he argues that confinement implies an action such as locking someone in a room or a car. Long further asserts that there was insufficient evidence that Bobbie D. did not consent to the hug.

■

¶ 28. This court has previously explained that confinement is the "restraint by one person of the physical liberty of another." *Herbst v. Wuennenberg,* 83 Wis. 2d 768, 774, 266 N.W.2d 391 (1978). Nothing in the

statute or our case law limits confinement to situations where the defendant locks another person in some sort of structure, as Long suggests.

¶ 29. In this case, Bobbie D. testified, "He just kept holding on very tight and both arms were around and it was just very tight and he didn't let go." We conclude that, based on such testimony, a reasonable jury could have determined beyond a reasonable doubt that Long restrained Bobbie D.'s physical liberty.

¶ 30. Long further argues that there was insufficient evidence that Bobbie D. did not consent to the confinement or restraint. He points to her testimony during cross-examination, where Bobbie D. equivocated about whether she had affirmatively told Long that he could not hug her. Long's argument misses the mark. Even if Bobbie D. was silent and did not back away from Long, those facts would not establish her consent.

¶ 31. Although Wis. Stat. § 939.22(48) enumerates several definitions of "without consent," "consent in fact" is not specifically defined in that statute or in the false imprisonment statute. Nonetheless, consent is defined in the sexual assault statute as "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have . . . sexual contact." Wis. Stat. § 940.225(4). In the context of sexual assault, consent in fact requires an affirmative indication of willingness. A failure to say no or to resist does not constitute consent in fact.

¶ 32. In the context of false imprisonment, consent in fact is established by words or overt actions by a person who is competent to give informed consent

indicating a freely given agreement to be confined or restrained. *See id.* Long does not point to any words or actions by Bobbie D. that would indicate her freely given agreement to be confined or restrained. Under these circumstances, we conclude that even if the jury did not believe that Bobbie D. said no, a reasonable jury could have determined beyond a reasonable doubt that she did not consent in fact to the restraint.

## IV

¶ 33. Having determined that there was sufficient evidence to convict Long of second-degree sexual assault and false imprisonment, we turn next to his argument regarding the persistent repeater penalty enhancer. Long asserts that the circuit court wrongly concluded that he was a persistent repeater. He points to Wis. Stat. § 939.62(2m)(d), which provides that "comparable" out-of-state convictions can be counted as strikes "only if the court determines, beyond a reasonable doubt, that the violation relating to that conviction would constitute a [serious felony] if committed by an adult in this state."

¶ 34. Long acknowledges that his previous conviction for fourth-degree criminal sexual conduct in Washington County, Minnesota would have constituted a serious felony in Wisconsin and thus constitutes one "strike." However, he asserts that his second "strike," a Hennepin County, Minnesota conviction for first-degree burglary, is not comparable to a serious felony in Wisconsin. He contends that the circuit court erred by concluding that, under the facts alleged in the Hennepin County complaint, Long would have been guilty beyond a reasonable doubt of second-degree sexual assault in Wisconsin.

108

¶ 35. We need not address this argument because we determine that, based on the previous convictions that were listed in the complaint and the plain language of the persistent repeater statute, Long is not a persistent repeater. The statute provides that an actor is a persistent repeater if:

> ■ The actor has been convicted of a serious felony on 2 or more separate occasions at any time preceding the serious felony for which he or she presently is being sentenced . . . and [2], *of the 2 or more previous convictions, at least one conviction occurred before the date of violation of at least one of the other felonies for which the actor was previously convicted.*

Wis. Stat. § 939.62(2m)(b)1 (emphasis added).

¶ 36. This subsection establishes two independent requirements that must be met before a defendant is deemed a persistent repeater. The first clause requires that the two previous strikes occurred before the Wisconsin felony for which the defendant is presently being sentenced. The second clause requires that the conviction date for the first strike preceded the violation date for the second strike.

¶ 37. When asked at oral argument how this subsection should be construed, counsel for the State argued that it simply requires that at least one of the previous convictions preceded the present conviction. This proposed interpretation does not comport with the plain meaning of the statute and principles of statutory interpretation.

¶ 38. First, the State's interpretation is inconsistent with the text of the second clause, which provides that "*of the 2 or more previous convictions,* at least one conviction occurred before the date of violation of at least one of the other felonies for which the actor was *previously* convicted." *Id.* (emphasis added). This clause

109

discusses the relationship between the two previous strikes, rather than the relationship between the previous strikes and the present Wisconsin conviction.

¶ 39. Further, when construing statutes, meaning should be given to every word, clause, and sentence. *Hutson v. Wis. Pers. Comm'n*, 2003 WI 97, ¶ 49, 263 Wis. 2d 612, 665 N.W.2d 212. A construction that would render part of the statute superfluous should be avoided. If the second clause meant only that one of the previous convictions must have occurred before the present Wisconsin offense, as the State asserts, then the second clause would be entirely superfluous. The first clause requires that *both* previous convictions occurred before the date of the present Wisconsin felony.

¶ 40. Lest there be any doubt about the intent of the legislature in enacting this subsection, the legislative history confirms our analysis. Before the legislature passed 1993 Wisconsin Act 289, which codified the statutory language quoted above, the Legislative Reference Bureau provided the following analysis of the bill:

> This bill creates a persistent repeat serious felony offender category and persons who are persistent repeat serious felony offenders must be sentenced to life imprisonment without the possibility of parole. To be subject to this persistent repeat serious felony offender status, a person must currently be sentenced for a serious felony and *must have had convictions, or delin-* quency adjudications,[8] *on 2 or more separate occasions for serious felonies preceding the current serious felony*

---

[8] A later amendment removed juvenile adjudications from the list of serious felonies that would subject an offender to the persistent repeater penalty enhancement.

*violation. In addition, of the prior convictions ... , at least one of the convictions ... must have occurred before the date of at least one of the other serious felony violations ....*

This analysis clearly states that: (1) the conviction date for the first offense must have preceded the violation date for the second offense, and (2) the conviction date for the second offense must have preceded the violation date for the current Wisconsin offense.

¶ 41. Having determined that application of the persistent repeater statute requires a particular sequence of convictions, we turn to the convictions listed in Long's criminal complaint. They do not meet these requirements. The violation date of the Washington County, Minnesota offense is March 23, 2003, and the conviction date for that offense is January 7, 2004. The violation date for the Hennepin County, Minnesota offense is March 26, 2003, and the conviction date for that offense is December 18, 2003. The conduct leading to his current Wisconsin convictions occurred on October 24, 2004, and he was convicted on November 30, 2006.

¶ 42. Both of Long's prior convictions occurred before the date of violation of his present Wisconsin felonies, satisfying the statutory requirement that "[t]he actor has been convicted of a serious felony on 2 or more separate occasions at any time preceding the serious felony for which he ... presently is being sentenced." *See* Wis. Stat. § 939.62(2m)(b)1. However, the conviction date of the Hennepin County offense was not before the violation date of the Washington County offense. Likewise, the conviction date of the Washington County offense was not before the violation date of the Hennepin County offense. Neither of Long's previous convictions occurred "before the date of violation

111

of . . . the other felon[y] for which [Long] was previously convicted." *See id.* Therefore, the previous convictions listed in the criminal complaint do not satisfy the statutory requirements for sentencing under the persistent repeater statute.

¶ 43. Long did not advance this statutory interpretation argument at the circuit court or at the court of appeals. Normally, under such circumstances, we would conclude that an issue neither raised nor briefed is waived. Long's sole recourse would be to file a motion for post-conviction relief, perhaps alleging ineffective assistance of counsel.

¶ 44. Nonetheless, waiver is merely a rule of judicial administration. *State v. Moran,* 2005 WI 115, ¶ 31, 284 Wis. 2d 24, 700 N.W.2d 884. Waiver does not limit this court's authority to address unpreserved issues, particularly when doing so can clarify an issue of statewide importance. *Clean Wis., Inc. v. Pub. Serv. Comm'n,* 2005 WI 93, ¶¶ 270–71, 282 Wis. 2d 250, 700 N.W.2d 768. The proper interpretation of the persistent repeater statute is an issue of great importance in Wisconsin law. In this case, the circuit court, the State, and the defense attorneys misinterpreted the persistent repeater statute, and the court mistakenly sentenced Long to life imprisonment without the possibility of parole. Under these circumstances, we decline to conclude that this argument is waived.

¶ 45. We determine that the circuit court incorrectly interpreted and applied Wis. Stat. § 939.62(2m)(b). Under the plain language of the statute and the facts alleged in the complaint, Long is not a

persistent repeater. Accordingly, we vacate the sentence and remand to the circuit court for resentencing consistent with this opinion.

## V

¶ 46. On remand, this case may present several new and complex issues. Although we briefly note these issues below, we need not and do not make any determinations about them today.

¶ 47. First, it is conceivable that the State may wish to amend its complaint to substitute other prior convictions as the basis for the persistent repeater allegation.

¶ 48. Wis. Stat. § 973.12(1) provides in part:

Whenever a person charged with a crime will be a repeater or a persistent repeater under s. 939.62 if convicted, any applicable prior convictions may be alleged in the complaint, indictment or information or amendments so alleging at any time before or at arraignment, and before acceptance of any plea.

¶ 49. We have never specifically addressed whether it is permissible for the State to amend a criminal complaint after the conclusion of a jury trial. We have, however, discussed when it is permissible for the State to amend a complaint after the defendant enters a guilty plea. *See, e.g., State v. Bonds,* 2006 WI 83, 292 Wis. 2d 344, 717 N.W.2d 133; *State v. Gerard,* 189 Wis. 2d 505, 525 N.W.2d 718 (1995); *State v. Martin,* 162 Wis. 2d 883, 470 N.W.2d 990 (1991).

¶ 50. In *Bonds,* we stated that a post-plea amendment was permissible in that case because (1) the defendant had notice that he was being charged as a habitual criminal, and (2) the defendant was not preju-

113

diced in making an intelligent plea as a result of the substitution of a different previous conviction as a factual basis for its repeater allegation. 292 Wis. 2d 344, ¶ 2. These are factual determinations. If, in this case, the State wishes to substitute different previous convictions as the factual basis for the persistent repeater allegation, the circuit court will have to determine whether it is permissible for the State to amend a criminal complaint after the conclusion of a jury trial. If so, it will have to determine what test is appropriate for such a post-trial amendment.

¶ 51. Second, if the State is permitted to amend its complaint, the circuit court will have to determine what documents are necessary to establish the fact of the prior convictions. When an offender is sentenced as a persistent repeater, proof of a prior conviction directly affects a liberty interest, and proof beyond a reasonable doubt is essential. *See id.,* ¶ 40. The statutes provide that "[a]n official report of the F.B.I. or any other governmental agency of the United States or of this or any other state shall be prima facie evidence of any conviction or sentence therein reported." Wis. Stat. § 973.12(1).

¶ 52. We have previously explained that:

> To be an official report under sec. 973.12(1), Stats., on which reliance may be placed, the report must contain relevant information regarding the issue of repeater status and must specifically include the date of conviction for the previous offense. . . . The report in the present case did not contain such information and, therefore, could not be relied on for the penalty enhancement.

*State v. Farr,* 119 Wis. 2d 651, 658, 350 N.W.2d 640 (1984). In *Bonds,* we concluded that an internet report

generated by the Wisconsin Consolidated Court Automation Programs (CCAP) is insufficient to prove the fact of a previous conviction. *Bonds,* 292 Wis. 2d 344, ¶¶ 46, 49.

¶ 53. There may be some circumstances when a judgment of conviction or similar document is entirely unnecessary to prove the fact of the prior conviction. For instance, a defendant's admission can constitute proof beyond a reasonable doubt. *See State v. Zimmerman,* 185 Wis. 2d 549, 557, 518 N.W.2d 303 (Ct. App. 1994). Nonetheless, in such a circumstance, the admission must contain specific reference to the date of conviction and to any periods of incarceration. *Id.*

¶ 54. In this case, the State did not provide an official judgment of conviction for either of the previous offenses it charged in the complaint. On remand, if the State is permitted to amend its complaint, the circuit court and State should ensure that the record is complete and that it allows the court to make the necessary determinations beyond a reasonable doubt.

¶ 55. Finally, the circuit court will be required to grapple with the difficult task of determining the nature of any out-of-state convictions. The question of whether an out-of-state conviction is "comparable" to a serious felony in Wisconsin raises difficult constitutional issues. We do not address these issues in any depth here because it is not necessary to do so in order to resolve this appeal. However, courts applying a persistent repeater statute must be conscious of these constitutional complexities.

¶ 56. In *Apprendi v. New Jersey,* 530 U.S. 466, 489 (2000), the Supreme Court declared that every fact that increases the penalty for a crime beyond the statutory maximum sentence must be submitted to a jury and

proven beyond a reasonable doubt. The sole exception to the rule is the fact of a prior conviction. *Id.*

¶ 57. However, when the court is required to compare an out-of-state conviction to the Wisconsin criminal code, the court might be required to assess not only the fact of a prior conviction but also the facts and conduct underlying that conviction. Whether a judge is permitted to make these assessments could implicate *Apprendi.*

¶ 58. The United States Supreme Court has struggled to resolve a similar dilemma. *See Shepard v. United States,* 544 U.S. 13, 26 (2005); *Taylor v. United States,* 495 U.S. 575, 601 (1990). In *Shepard* and *Taylor,* the Court was required to determine whether the defendants' prior state convictions were comparable to the "generic burglary" offenses as contemplated by the federal Armed Career Criminal Act. The Court stated that a judge's inquiry into the nature of a previous offense "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard,* 544 U.S. at 26; *see also State v. LaCount,* 2008 WI 59, ¶ 52, 310 Wis. 2d 85, 750 N.W.2d 780 ("[A] trial court judge, rather than a jury, is allowed to determine the applicability of a defendant's prior conviction for sentence enhancement purposes, when the necessary information concerning the prior conviction can be readily determined from an existing judicial record.").

¶ 59. The constitutional complexities are further heightened when the court must review a complaint charging multiple crimes, yet the defendant pleaded guilty to only one. The court must determine the

factual basis for the plea, and whether that factual basis would support a conviction for a serious felony in Wisconsin beyond a reasonable doubt. As the United States Supreme Court cautioned in *Taylor,* 495 U.S. at 601, "the practical difficulties and potential unfairness of a factual approach are daunting."

¶ 60. In sum, we conclude that there was sufficient evidence for a jury to find Long guilty of second-degree sexual assault and false imprisonment. We further conclude that the circuit court incorrectly applied Wis. Stat. § 939.62(2m). Under the plain language of the statute and the facts alleged in the complaint, Long is not a persistent repeater. Accordingly, we affirm the convictions, vacate the sentence, and remand to the circuit court for resentencing consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the circuit court for resentencing.