## COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 10, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1936-CR**

Cir. Ct. No. 2016CF2963

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

LACASANOVA S. DAVIS,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

Before Kessler, Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. Lacasanova S. Davis appeals from a judgment, entered upon a jury's verdicts, convicting him on two counts of second-degree

sexual assault. Davis contends there was insufficient evidence to support the verdicts. We disagree and affirm the judgment.

## BACKGROUND

¶2    On June 27, 2016, sixteen-year-old B.A.B. and three other teens went to Bradford Beach along Lake Michigan. The group brought two bottles of vodka and began drinking upon their arrival. While at the beach, they were approached by three adult men, including Davis. The men drank with the teens for thirty to sixty minutes, with the men replenishing the teens' empty cups. Someone also provided beer. After B.A.B. attempted a cartwheel and fell on her face, Davis picked B.A.B. up and carried her into the water, where he had penis-to-vagina sexual intercourse with her, despite her friends' protestations from shore.

¶3    As a result of this encounter, Davis was charged with two counts of second-degree sexual assault, both Class C felonies, and one count of sexual intercourse with a child age sixteen or older, a Class A misdemeanor. The case was tried to a jury, which convicted Davis on all three counts. Davis was given sentences totaling thirteen years of initial confinement and ten years of extended supervision. He appeals, challenging only the felony convictions. Additional facts will be discussed below as necessary.

## DISCUSSION

### I. Standard of Review.

¶4    On appeal, Davis challenges the sufficiency of the evidence to support the felony convictions. Essentially, he argues that the evidence was not strong enough to exclude every reasonable hypothesis of his innocence. This argument, however, misapplies the standard of review.

¶5 "In order to overcome the presumption of innocence accorded a defendant in a criminal trial, the state bears the burden of proving each essential element of the crime charged beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). "Regardless of whether the evidence presented at trial to prove guilt is direct or circumstantial, it must be sufficiently strong and convincing to exclude every reasonable hypothesis consistent with the defendant's innocence in order to meet the demanding standard of proof beyond a reasonable doubt." *Id.* at 502. "The rule that the evidence must exclude every reasonable hypothesis of innocence does not mean that if any of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty." *Id.* at 503. Rather, "the rule that the evidence must exclude every reasonable hypothesis of innocence refers to the evidence which the jury believes and relies upon to support its verdict." *Id.*

¶6 While the jury "must be convinced that the evidence presented at trial is sufficiently strong to exclude every reasonable hypothesis of the defendant's innocence in order to find guilt beyond a reasonable doubt … that rule is not the test on appeal." *Id.* On appeal, we defer "to the jury's determination and view the evidence in the light most favorable to the State." *State v. Long*, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. "If more than one inference can be drawn from the evidence, we must adopt the inference that supports the conviction." *Id.* We do not substitute our judgment for the jury's "unless the evidence is so lacking in probative value and force that no reasonable jury could have concluded, beyond a reasonable doubt, that the defendant was guilty." *Id.* Stated another way, this court will overturn a verdict for evidentiary insufficiency "only if the trier of fact could not possibly have drawn the appropriate inferences

from the evidence adduced at trial to find the requisite guilt." *State v. Watkins*, 2002 WI 101, ¶68, 255 Wis. 2d 265, 647 N.W.2d 244.

## *II. Sufficiency of the Evidence on Count 1.*

¶7 Count 1 of the complaint charged Davis with second-degree sexual assault by use of force, contrary to WIS. STAT. § 940.225(2)(a) (2013-14).[1] To meet its burden on this charge, the State was required to prove that: (1) Davis had sexual intercourse with B.A.B.; (2) B.A.B. did not consent to the sexual intercourse; and (3) Davis had sexual intercourse with B.A.B. by use or threat of force or violence. *See* § 940.225(2)(a); *see also* WIS JI—CRIMINAL 1208 (2014).

¶8 Davis does not take issue with the sufficiency of the evidence to support the first two elements; rather, he contends that the evidence was "insufficient to find that defendant had used force or threatened the use of force in order to compel B.A.B. to have sexual intercourse against her will." Among other arguments, he contends that "[t]here is no evidence that any choice by the victim had been forced"; "[t]here had been no resistance"[2] by B.A.B. to Davis picking her up and carrying her into the water; there was some evidence B.A.B. had told Davis "no" or told him to stop, but there was no evidence that he heard it; and there was "no physical violence towards [B.A.B.], such as hitting.… He had simply carried her out into the water, and then sexual intercourse had occurred." He asserts that

---

[1] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

[2] Although Davis's argument focuses on the use of force rather than consent, we note that a failure to resist does not constitute consent. *See* **State v. Long**, 2009 WI 36, ¶31, 317 Wis. 2d 92, 765 N.W.2d 557.

4

"all of the evidence had pointed to a situation of <u>voluntary</u> submission to sexual intercourse."

¶9      Although there was no evidence of any particular violence, "such as hitting" or use of a weapon, there is sufficient evidence from which the jury could infer that Davis employed the use or threat of force against B.A.B. to have sexual intercourse with her.  "Under Wisconsin law, force has been used when the victim is compelled to submit."  *Long*, 317 Wis. 2d 92, ¶24.  "The phrase 'by use of force' includes forcible contact or the force used as the means of making contact." *State v. Bonds*, 165 Wis. 2d 27, 32, 477 N.W.2d 265 (1991).  "Force used at the time of contact can compel submission as effectively as force or threat occurring before contact."  *Id.*  "When force is used at the time of contact, the victim has no choice at the moment of simultaneous use of force and making of contact."[3]  *Id.*

¶10     One witness testified that B.A.B. "seemed like she couldn't really sit up" but for Davis holding her; B.A.B. would "kind of fall back" and Davis would have to "pull her up."  A fourteen-year-old boy testified that, when he tried to intervene by grabbing B.A.B.'s wrist to pull her to shore, Davis slapped his hand away and moved further into the water.  Others arrived and were eventually able to pry B.A.B from Davis's grasp.  *Cf. Long*, 317 Wis. 2d 92, ¶¶10, 25 (holding that when defendant grabbed the victim and hugged her "tightly and forcibly," during which he rubbed his clothed penis against her, evidence was sufficient to establish force or threat of force).

---

[3] Although *State v. Bonds*, 165 Wis. 2d 27, 477 N.W.2d 265 (1991), involves sexual contact instead of sexual intercourse, we see no reason why its explanation of the force element would differ.

¶11   B.A.B. also testified.   Though she did not remember much after Davis picked her up and took her to the water, she did recall feeling the pressure of his penis, first outside then inside her vagina.   The intercourse lacerated B.A.B.'s vagina in three places, which the treating emergency room physician explained was indicative of "blunt force trauma to the genitalia." *Cf.* **Bonds**, 165 Wis. 2d at 28, 33 (holding that defendant forcibly grabbing, squeezing, and pulling victim's nipple constituted use of force).

¶12   Based on the foregoing, we conclude there was sufficient evidence from which a reasonable jury could infer that Davis used force to compel B.A.B.'s submission to sexual intercourse.   Thus, there is sufficient evidence to support the conviction on count 1 of the complaint.[4]

### III.  Sufficiency of the Evidence on Count 2.

¶13   Count 2 of the complaint charged Davis with second-degree sexual assault by sexual intercourse with an intoxicated person, contrary to WIS. STAT. § 940.225(2)(cm).   To meet its burden on this charge, the State was required to prove that:  (1) Davis had sexual intercourse with B.A.B.; (2) B.A.B. was under the influence of an intoxicant at the time of the intercourse; (3) B.A.B. was under the influence to a degree which rendered her incapable of giving consent; (4) Davis had actual knowledge that B.A.B. was incapable of giving consent; and (5) Davis had the purpose to have sexual intercourse with B.A.B. while she was incapable of giving consent.  *See* WIS JI—CRIMINAL 1212 (2014).

---

[4] As noted, Davis does not appear to dispute that he had sexual intercourse with B.A.B. or that it was without her consent, only that there was insufficient evidence that he used force to compel her submission.  To the extent that Davis might dispute the other two elements, however, we agree with the analysis presented in the State's brief in support of the verdict.

6

¶14    Davis again does not take issue with the assertion that he had intercourse with B.A.B., nor does he appear to take issue with the fact that she was under some influence of an intoxicant.  Instead, he asserts that the evidence on the remaining three elements was "insufficient to find that B.A.B. had been so intoxicated that she could not give consent; that the defendant had actual knowledge that she was so intoxicated; and that he had the purpose to have sexual intercourse with her while she had been so intoxicated."

¶15    Davis acknowledges that B.A.B. had been drinking but denies that she was too intoxicated to consent and denies knowing that she was that level of intoxicated.  He argues, among other things, that B.A.B. had "knowingly and consciously attempted a cartwheel" so she was "conscious and sober enough" to know she wanted to attempt one; she was "conscious enough to be able to wrap her arms around his neck and her legs around his waist and body … knowingly and consensually so that she would not fall"; and after the assault, she identified herself and the other teens and her relationship to them.  In short, Davis argues that "although she had been drinking, based upon her actions and her conduct, she had not been so intoxicated to have been unable to consent."

¶16    There is adequate evidence from which a reasonable jury could conclude both that B.A.B. was too intoxicated to consent and that Davis knew of her impairment.  The group had been drinking together for at least thirty minutes, and possibly as long as sixty minutes, before the assault.  B.A.B.'s blood-alcohol concentration shortly after the incident was .267, which is more than three times the .08 legal limit for an adult to operate a vehicle.  During her cartwheel attempt, she fell on her face.

¶17     Consent "requires an affirmative indication of willingness. A failure to say no or to resist does not constitute consent in fact." *Long*, 317 Wis. 2d 92, ¶31. But at least one of B.A.B.'s friends described her as the most intoxicated of the group, barely able to walk or talk and in need of help to get up or do anything. Her speech was slurred and incomprehensible. While in the water, she did not acknowledge or respond to her friends' calls from shore. Other witnesses described B.A.B. as incoherent after she was brought back to shore, unable to speak or stand, with no control over her body. A sheriff's deputy who responded to the beach said he could tell B.A.B. had been drinking because she could not stand or form a complete sentence and had to be carried to the ambulance. The examination at the hospital was delayed for about two hours because B.A.B was initially too incoherent to consent. Thus, the jury could reasonably infer that B.A.B. was too intoxicated to give any "affirmative indication of willingness" and that Davis had to have been able to tell that she was too impaired to give such consent.

¶18     Regarding whether Davis had a "purpose" to have intercourse with B.A.B. while she was too intoxicated to consent, Davis simply asserts that, based on the evidence he thinks shows B.A.B. was not so intoxicated that she could not consent, there is also insufficient evidence "to show that he had the purpose to take advantage of her intoxication or that he had the purpose to have sexual intercourse with her while she had been incapable of giving consent." Specifically, he points to evidence that she was "knowingly and consensually" wrapping her arms around his neck "so that she would not fall"[5] and evidence that

---

[5] Even assuming that B.A.B. "consensually" held on to Davis, he does not explain how grabbing hold of a person so as to avoid falling is an affirmative indication of willingness to engage in sexual intercourse.

she was "making moaning sounds" while in the water, which he argues could have been "sounds of pleasure as opposed to pain or lack of consent."[6]

¶19    There was evidence that Davis and his friends had supplied some of the liquor to the teens, or at least replenished their empty cups, from which the jury could infer that Davis had a purpose to aid B.A.B.'s incapacity to consent. It was evident to multiple bystanders that Davis was having sexual intercourse with B.A.B., and his purpose to have intercourse can be inferred from the act itself. His purpose to have sexual intercourse with B.A.B. while she was incapable of consenting is further revealed by him carrying her into the water while she was unable to move of her own volition, ignoring her friends calling them back to shore, and resisting those who tried to physically intervene. A reasonable jury thus could find that Davis had a purpose to have sexual intercourse with B.A.B. while she was heavily intoxicated and unable to consent. Thus, there is sufficient evidence to support the conviction on count 2 of the complaint.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[6] Under the facts of this case, suggesting that B.A.B. may have enjoyed her sexual assault strikes us as a highly inappropriate argument.