COURT OF APPEALS
DECISION
DATED AND FILED

February 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP838-CR**

Cir. Ct. No. **2016CF170**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD LEE ZEIER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Richard Zeier appeals from a judgment of conviction, following a jury trial, convicting him of three counts of first-degree

sexual assault of a child under the age of thirteen. Zeier argues: (1) the criminal complaint was insufficient; (2) the evidence at trial was insufficient to sustain his conviction; (3) the circuit court erroneously admitted during the trial his statements about being gay and other acts evidence; (4) the prosecutor made improper arguments and statements throughout the trial that amounted to prosecutorial misconduct; and (5) the circuit court erroneously exercised its discretion by instructing the jury to continue its deliberations rather than granting his motion for a mistrial. We reject his arguments and affirm.

## BACKGROUND

¶2 The charges stemmed from then-sixty-six-year-old Zeier drinking urine from the penis of a five-year-old child. Zeier moved to dismiss the criminal complaint, contending there was no evidence that his actions were "[f]or the purpose of … sexually arousing or gratifying the defendant"—a necessary element of sexual contact, as defined by WIS. STAT. § 948.01(5)(c) (2017-18).[1] The circuit court denied the motion to dismiss and the case proceeded to trial, where the sole issue was whether Zeier's drinking of the urine was sexually motivated.

¶3 The State presented two witnesses at trial: the victim's grandmother, with whom the victim lived at the time of the crimes; and an investigator with the St. Croix County Sheriff's Office. The grandmother testified that she had lived with her husband for seven or eight years in a trailer rented from Zeier on his land. About a month before the victim's sixth birthday, the victim told his grandmother that Zeier "drinks pee." The grandmother responded, "[N]o, that's nasty. Nobody

---

[1] References to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

drinks pee." However, the victim insisted, "[N]o, for real. He said it was warm and it tasted good." The victim then motioned how he had urinated in Zeier's mouth. The grandmother mentioned this information to a therapist, who spoke to the victim and then informed law enforcement.

¶4 Prior to speaking to a police investigator, the grandmother confronted Zeier regarding these revelations. The grandmother testified that Zeier asked her "not to report it, because he didn't want to get in trouble." The grandmother further testified: "I asked him why. He said he was gay. I said that has nothing to do with it." Zeier also told her if she did not call the police "he would be willing to help." Zeier explained that he could "help you pay for part of the therapy and give a little bit of a break on the rent."

¶5 At trial, the State played audiovisual recordings of law enforcement interviews with Zeier, as well as with the victim. Zeier described to the police investigator three occasions that he drank the victim's urine. The first time it happened, the victim had been running around a kiddie pool in his swim trunks when he said he had to pee. When the victim began to urinate on the ground, Zeier stuck his "head over" so that the victim urinated into Zeier's mouth.

¶6 The second incident occurred when Zeier and the victim were riding bicycles, the victim got off to urinate, and Zeier again drank his urine. Zeier also described a third incident when he drank the victim's urine; however, Zeier denied that he "lure[d] [the victim] anywhere" or "to do anything either." When asked, Zeier denied touching the victim "at all[,] period."

¶7 Zeier further admitted to the investigator that he had "drank other individuals' urine prior to" his behavior with the victim, and his previous behavior

3

"could have been" with a sexual partner. Zeier denied, however, that he had ever done so with a child before.

¶8      The jury deliberated over the course of an afternoon, into the evening, and part of the following morning. The jury then advised the circuit court that it had been unable to come to an agreement on the verdict. The State requested that the court read the jury WIS JI—CRIMINAL 520, which instructs the jury to "attempt to come to an agreement." Over Zeier's objection, the court gave the instruction, and the jury returned to deliberate. The jury returned guilty verdicts on all counts approximately one hour later. Zeier now appeals.

## DISCUSSION

¶9      Zeier first renews his argument that the four corners of the criminal complaint fail to contain sufficient factual allegations to support a finding of probable cause to believe Zeier had consumed the victim's urine for sexual gratification. A criminal complaint is to be evaluated in a commonsense manner, setting forth the essential facts establishing probable cause. *State v. Adams*, 152 Wis. 2d 68, 73, 447 N.W.2d 90 (Ct. App. 1989). A complaint is sufficient if it answers five questions: (1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who reliably says so? *Id.* at 73-74.

¶10      Here, the complaint charged Zeier with three counts of sexual assault of a child for drinking urine from the victim's penis, and it set out the dates and places where the alleged incidents occurred. The allegations were extremely reliable because both Zeier's and the victim's versions of the events were consistent.

4

¶11     Zeier nevertheless argues that drinking urine is not inherently sexual. The complaint, however, alleged that Zeier admitted that he had previously consumed urine during sexual relationships. A reasonable inference from the complaint is that Zeier's motivation in the present case was also sexual. The fact that there may be other reasonable inferences does not preclude a probable cause finding sufficient to deny the dismissal motion. Assuming for the sake of argument that drinking urine is not inherently sexual, a reasonable person could conclude that Zeier's intent in drinking urine from the victim's penis was sexually motivated. *See id.* The complaint was legally sufficient.

¶12     The evidence at trial was also sufficient for the jury to find Zeier guilty. In this regard, we give deference to the jury's determination and view the evidence in the light most favorable to the State. *See **State v. Long***, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. If more than one inference can be drawn from the evidence, we must adopt the inference that supports the conviction. ***Id.***

¶13     The jury was instructed to find Zeier guilty if it concluded that Zeier had sexual contact with the victim, and that the victim was under thirteen years old at the time of the contact. The circuit court also instructed the jury that sexual contact as defined by Wisconsin law "is the emission of urine by [the victim] on any part of Richard Zeier's body, clothed or unclothed, which Richard Zeier intentionally causes." The court further instructed that sexual contact also required that "Zeier acted with the intent to become sexually aroused or gratified."

¶14     On appeal, Zeier does not argue that the jury instructions were incorrect, nor did he object to the circuit court's reading of the instructions at trial. Moreover, the evidence irrefutably established that Zeier drank the five-year-old victim's urine on three occasions, placing his head in a position such that the

victim's urine flowed into Zeier's mouth from the victim's penis. However, Zeier argues that the evidence was insufficient to find that he drank the urine with the intent to become sexually aroused or gratified.

¶15 Zeier's own statements showed a consciousness of guilt. He asked the victim's grandmother "not to report it, because he didn't want to get in trouble." Moreover, he told the grandmother that if she "didn't call the police, as long as she didn't report it, he would be willing to help." Zeier also told the investigator he understood why the grandmother would be "a little ticked off" and that it was "not a normal thing." When asked for specifics on where these events occurred, Zeier responded, "I didn't lure him anywhere, you know."

¶16 Zeier also admitted to law enforcement that he could have drunk urine on other occasions with sexual partners when he was "intimate with him or her." This admission, coupled with his statements to the victim's grandmother tending to show Zeier knew he had acted wrongly, provided a reasonable inference from which a jury could find that Zeier's drinking urine from the victim's penis was done with the intent to become sexually aroused or gratified. The evidence was sufficient to support the verdicts.

¶17 The circuit court properly exercised its discretion by admitting Zeier's statements and other acts evidence. Prior to trial, the State gave notice that it intended to use Zeier's statement to the victim's grandmother that he was gay, which he made after she confronted him about why he had consumed the victim's urine. The State also gave notice that it intended to use Zeier's statement that he could have consumed others' urine during his sexual relationships.

¶18 Zeier sought to exclude the statement that he is gay as inadmissible character evidence. He also sought to exclude the statement that he had previously

consumed others' urine during sexual relationships as impermissible other acts evidence.

¶19    The circuit court properly concluded that Zeier's statement that he was gay was not character evidence.  The State sought to use Zeier's statement to contradict Zeier's defense that he drank the victim's urine only because he liked the taste of urine.  Zeier did not, however, offer the explanation to the victim's grandmother that he did it because he liked the taste of urine.  Instead, when the grandmother asked him why he drank the urine, Zeier "said he was gay."  Accordingly, Zeier's statement to the grandmother undermined his credibility at trial.  In addition, the statement showed that Zeier associated drinking urine with his own sexuality, which was relevant to the element of sexual contact—the intent to become sexually aroused or gratified.

¶20    Zeier's statement that he is gay was neither positive nor negative, nor was it a social or cultural construct, and thus it was not an opinion.  *See* 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 404.101 at 172 (4th ed. 2017).  Furthermore, the State did not seek to admit Zeier's statement that he was gay to prove that he "acted in conformity therewith." *See* WIS. STAT. § 904.04(1).  The evidence was relevant to the issues of intent or purpose at trial, and it was not unduly prejudicial.  Indeed, Zeier told the jury that he was gay and asked whether any member felt they could not give him fair treatment because of that fact.  Furthermore, the circuit court twice instructed the jury that it could not consider Zeier's sexuality to conclude that he "has a certain character or a certain character trait, or that Mr. Zeier acted in conformity with that trait or character with respect to the offenses charged."  We presume the jury follows the court's instructions.  *State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶21 Moreover, assuming without deciding that Zeier's admission to the prior consumption of urine constituted "other acts" evidence, the circuit court correctly admitted the evidence for a proper purpose under WIS. STAT. § 904.04(2)(a). The evidence was highly probative of Zeier's motive or intent to sexually gratify or arouse himself—the only contested issue at trial. The evidence was not too dissimilar and remote in time to be relevant simply because, in this case, he drank a child's urine outdoors "in broad daylight," as Zeier argues. The differing circumstances of the other acts do not preclude a reasonable inference that Zeier's purpose in drinking urine from the victim's penis was also sexual. Quite simply, Zeier fails to establish how the court erroneously exercised its discretion by concluding that the evidence was admitted for a proper purpose— motive and intent—and that it was relevant and not overly prejudicial. *See State v. Sullivan*, 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998). In this regard we note that a greater latitude of proof as to other occurrences is permitted in child sexual assault cases. *See State v. Hurley*, 2015 WI 35, ¶59, 361 Wis. 2d 529, 861 N.W.2d 174.

¶22 Zeier next argues that the prosecutor "made improper arguments throughout every stage of the trial, violating motions in limine, repeatedly attempting to appeal to jurors' emotions, referring to his personal understandings of legal terms after being ordered not to, mischaracterizing the evidence, discussing evidentiary rulings, and repeatedly drawing attention to Zeier's homosexuality." The determination of whether prosecutorial misconduct occurred and whether such conduct requires a new trial is within the circuit court's discretion. *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996).

¶23 Prior to trial, the circuit court prohibited the State's expert witness from offering opinions about paraphilia and paraphilic disorders. Specifically, the State's expert was going to testify about urophilia, which "involves sexual arousal that is associated with the observation of, thought of, physical contact with, and/or ingestion of urine, or the act of urinating on another." During voir dire, the prosecutor asked the jury panel whether any member was familiar with the term "urophilia." Zeier objected, and the court conducted a bench conference that was not reported on the record. The prosecutor did not use the term again in front of the jury. Zeier later moved for a mistrial, but the court disagreed that the prosecutor had intentionally violated the court's order, and concluded "that the mere mention of the word in and of itself [did] not prejudice the jury." Zeier fails to adequately explain how the court's decision not to grant a mistrial was an erroneous exercise of discretion, and we will not further address the issue.

¶24 During the State's opening statement, the prosecutor told the jury the victim had significant trouble with speech, had some behavioral issues, and struggled with attention deficit hyperactivity disorder. Zeier objected, and a bench conference was again held off the record. After the bench conference, the prosecutor continued and told the jury that Zeier was "aware" of the victim's "issues." However, the record on appeal fails to show that Zeier moved for a mistrial following the State's opening statement, and any complaint was thus forfeited. *See* ***State v. Polashek***, 2002 WI 74, ¶25, 253 Wis. 2d 527, 646 N.W.2d 330.

¶25 Zeier objected nine times during the State's closing argument and once during the State's rebuttal argument. Zeier first objected after the State told the jury, "[W]hen you learned that [Zeier] admittedly caused [the victim] to urinate into his mouth three times, you felt something physical. You felt

9

something deep inside your gut. Something that led you to know … intrinsically that what Mr. Zeier did is wrong." The circuit court then held a bench conference, which was again off the record. Thereafter, the court instructed the jury not to "be swayed by sympathy, prejudice or passion. You will be very careful and deliberate in weighing the evidence and to consider the facts aside from any sympathy, prejudice or passion." The prosecutor then returned to his theme, and Zeier objected a second time. The court again held a bench conference that was not recorded on the record.

¶26    Shortly thereafter, the prosecutor began to tell the jury what he thought "aroused" meant, and Zeier objected. The circuit court sustained the objection. The prosecutor then told the jury to use its "common everyday experiences" to understand the terms "aroused" and "gratified" as used in the sexual contact element of sexual assault.[2]

¶27    Zeier's fourth objection came when the prosecutor said Zeier had targeted the victim, a boy "who had had many issues of his own." The circuit court overruled the objection. Zeier made his next three objections following the prosecutor's argument that Zeier gave the victim's grandmother excuses after she confronted Zeier about what he had done. The prosecutor argued there were signs "this was sexual in nature. There was sexual motivation[] here, that there was this purpose of sexual gratification for Mr. Zeier." The prosecutor further argued, "It came up in a couple of instances. The first time that [the grandmother] confronted Mr. Zeier about what [the victim] had told her, [Zeier] started to give her excuses.

---

[2] Jurors may rely on their common sense and life experiences during deliberation. *State v. Heitkemper*, 196 Wis. 2d 218, 225, 538 N.W.2d 561 (Ct. App. 1995).

Well, you know I'm gay, right?" Zeier objected, and the court held an unreported bench conference.

¶28    The prosecutor then told the jury that Zeier's sexual orientation did not make him a pedophile or "doesn't make a person like urine." But the prosecutor argued that Zeier's statement to the victim's grandmother was important because Zeier himself "associated what he did with his sexual preference." Zeier again objected. Following another unreported bench conference, the prosecutor told the jury that "being gay … doesn't cause people to be sexually gratified with urine. But [Zeier] associated it with his sexual preference." Zeier again objected, and the circuit court cautioned the jury that it could not use evidence of Zeier's sexual orientation to conclude that he had a "certain character" or that he "acted in conformity with that trait or character."

¶29    The prosecutor next argued to the jury that the evidence showed that Zeier had admitted to drinking urine in the past from sexual partners. Zeier objected, and the circuit court cautioned the jury it was to be "mindful that this is argument and that [it is] to restrict [its] consideration to the facts." Zeier again objected after the prosecutor told the jury that Zeier said that his previous experience in drinking urine "could have been with a sexual partner, made a statement that it happened … while engaging in a sexual act," and that his statement was "a very good indication of the motivation for drinking urine." After Zeier stated, "It's the same objection," the court told the prosecutor to "[k]eep going."

¶30    Zeier's objection during the State's rebuttal occurred after the prosecutor told the jury that Zeier's trial counsel was arguing that the circuit court "allowed in evidence" things that "[defense counsel] is saying should [not] have

been let in." Zeier said that the prosecutor's argument was "not correct," but the court responded, "Caution. Let's proceed."

¶31 After the close of arguments, and outside of the jury's presence, Zeier "noted" that he had moved for a mistrial during one of the unreported bench conferences, based primarily on the prosecutor's appeal to the jury's feelings. The circuit court denied the motion, emphasizing the wide latitude afforded during closing arguments. The court also found the prosecutor's argument was not improper.

¶32 Zeier now reiterates his objections on appeal to the prosecutor's closing arguments, but he fails to adequately explain how the prosecutor's comments rose to such a level as to violate his right to due process. *See Lettice*, 205 Wis. 2d at 352. A prosecutor may comment on the evidence, argue to a conclusion from the evidence, and state that the evidence convinces him or her— and should convince the jury. *State v. Mayo*, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115. The circuit court properly exercised its discretion by finding the prosecutor's arguments to be a fair recitation of the evidence, and although Zeier did not like the State's view of the evidence, we cannot say that it amounted to prosecutorial misconduct.

¶33 Moreover, Zeier has not shown prejudice from the prosecutor's remarks. When Zeier objected to the attempt to define words for the jury, the circuit court sustained the objection. When Zeier objected to the prosecutor's attempts to stress the significance of his sexual orientation, the court cautioned the jury not to use the evidence impermissibly. When Zeier objected to the prosecutor's appeal to juror sympathy, the court reminded the jury it was to consider only the facts. Any error was corrected by the court's instructions, and

Zeier has failed to show how any combined errors were so egregious as to constitute a due process violation.

¶34    Finally, Zeier argues the circuit court erroneously exercised its discretion when it instructed the jury to continue its deliberations instead of granting a mistrial. The court had received a note from the jury at approximately 11:00 a.m. stating, "Since yesterday at 5 p.m. till now, there has been no change in our ballots. We are at an impasse." The court asked the parties for their responses to the note. The State preferred that the court instruct the jury that it should continue to "attempt to come to an agreement," pursuant to WIS JI—CRIMINAL 520. Zeier stated, "I don't see at this point the benefit of 520, and defense would request that [Y]our Honor consider this a hung jury and declare a mistrial."

¶35    The circuit court opted to "give Instruction 520" with the hope that it "may in some way act as a catalyst for coming to an agreement." The court also stated that because "there is no magic formula to determine how long a jury should be out and what is [an] appropriate time frame, I'm inclined to try this and give them a little more time." The court also stated, however, that if the instruction did not serve its purpose, it would grant a mistrial.

¶36    The record demonstrates the circuit court considered the amount of time the jury had been deliberating, as well as the jury's indication that it was at an "impasse," and decided it should continue its deliberations. The court did not erroneously exercise its discretion in doing so.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.